**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRACY KOSH**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    2:12cv1041 |
| | )    **Electronic Filing** |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY**, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

July 22, 2013

**I.      INTRODUCTION**

Plaintiff Tracy Kosh ("Kosh") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act

("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The parties have filed cross-motions for summary

judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at

the administrative level.  For the reasons that follow, the motion for summary judgment filed by

Kosh (*ECF No. 8*) will be denied, the motion for summary judgment filed by the Commissioner

(*ECF No. 10*) will be granted, and the Commissioner's decision denying Kosh's applications for

benefits will be affirmed.

## II.    PROCEDURAL HISTORY

Kosh protectively applied for DIB and SSI benefits on March 11, 2009, alleging that she had become "disabled" on September 18, 2007.  R. at 156, 163, 168.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on October 16, 2009.  R. at 92, 97. Kosh responded on December 17, 2009, by filing a timely request for an administrative hearing. R. at 102-104.  On March 29, 2011, a hearing was held before Administrative Law Judge ("ALJ") Guy Koster.  R. at 55.  Kosh, who was represented by counsel, appeared and testified at the hearing.  R. at 58-82.  Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing.  R. at 82-87.  In a decision dated May 23, 2011, the ALJ determined that Kosh was not "disabled" within the meaning of the Act.  R. at 7-40.

On June 9, 2011, Kosh sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. at 150-154.  The Appeals Council denied the request for review on June 7, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  R. at 1.  Kosh commenced this action on July 25, 2012, seeking judicial review of the Commissioner's decision.  ECF Nos. 1-3.  Kosh and the Commissioner filed motions for summary judgment on October 24, 2012, and December 12, 2012, respectively. ECF Nos. 8 & 10.  These motions are the subject of this memorandum opinion.


## III.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).


IV.    THE ALJ'S DECISION

In his decision, the ALJ determined that Kosh had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 12. Kosh was found to be suffering from degenerative disc disease, status post laminectomy at L5-S1 with residuals, asthma, dyshidrotic eczema, major depressive disorder, anxiety, obesity, a history of cannabis abuse, and hypertension. R. at 12. Although her hypertension was deemed to be "non-severe," her remaining impairments were deemed to be "severe" under the Commissioner's regulations. R. at

12-14; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ

concluded that Kosh's impairments did not meet or medically equal an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. R. at 14-16.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Kosh's

"residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally. She can stand/walk up to 2 hours and sit 6 hours in an 8-hour day. She requires the ability to alternately sit/stand. She can occasionally balance, stoop, crouch, and climb, but can never climb ladders, ropes, or scaffolds. She can[2] perform work requiring kneeling, crawling, or squatting. She cannot perform work requiring repetitive operation of foot controls. She must avoid concentrated exposure to dust, fumes, odors, gases, poor ventilation, and other pulmonary irritants, as well as to wetness and humidity. She cannot perform jobs involving frequent contact/immersion of hands in water. Additionally, due to her psychological problems, she is limited to performing jobs involving routine, repetitive work with simple instructions, in a stable environment, requiring little independent decision making and only occasional contact with the general public, co-workers, and supervisors.

R. at 16. Kosh had "past relevant work"[3] experience as a cashier, cook and delivery driver. R. at

83. In response to a hypothetical question describing an individual with the abilities and

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] The word "can" appears to be a typographical error. R. at 16. At the hearing, the ALJ described a hypothetical individual who was precluded from kneeling, crawling or squatting. R. at 83, 85. Since the limitations were accurately conveyed to Kopar, any subsequent typographical error in the ALJ's decision was inconsequential. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008)(affirming a decision grounded in vocational expert testimony given in response to a hypothetical question that had accurately described a claimant's limitations).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations

limitations reflected in the ALJ's residual functional capacity assessment, Kopar testified that the described individual could not perform the duties of the jobs previously held by Kosh. R. at 83-84. Therefore, it was determined that Kosh could not return to her past relevant work. R. at 39.

Kosh was born on February 28, 1966, making her forty-one years old on her alleged onset date and forty-five years old on the date of the ALJ's decision. R. at 39, 58. She was classified as a "younger person" under the Commissioner's regulations.[4] 20 C.F.R. §§ 404.1563(c), 416.963(c). She had the equivalent of a high school education[5] and an ability to communicate in English. R. at 58-59, 171, 178; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Kosh could work as a surveillance systems monitor, an order clerk, or an order caller. R. at 40. Kopar's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[6] R. at 84.


V.    MEDICAL EVIDENCE

During the year immediately preceding her alleged onset date, Kosh worked as a delivery driver for a landscaping business. R. at 59, 173, 180. She was injured at work on September 18,

---

[4] governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[5] Kosh obtained her General Educational Development ("GED") certification in 1990. R. at 58-59, 178.

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

2007, while lifting a heavy plant. R. at 63. Kosh did not file a claim under Pennsylvania's Workers' Compensation Act [77 PA. STAT. § 1 *et seq.*] because she had planned to leave her job at the end of the day in any event. R. at 63, 252. When she applied for DIB and SSI benefits, Kosh stated that she had been "ready to start a new job" at the time of her injury. R. at 172.

Dr. Eric D. Nabors examined Kosh on October 22, 2007. R. at 252. Kosh complained of pain in her back and numbness in her left calf and foot. R. at 252. She was advised that a magnetic resonance imaging ("MRI") scan would be needed to obtain an accurate diagnosis. R. at 252. Kosh declined to pursue further evaluation and treatment because she did not have health insurance. R. at 252. Dr. Nabors provided her with a prescription for Vicodin. R. at 252.

Kosh returned to Dr. Nabors' office on December 10, 2007. R. at 251. At that time, she was still experiencing pain in her left buttock, thigh and calf. R. at 251. Dr. Nabors warned that further delays in treatment could lead to permanent damage. R. at 251. Kosh declined to undergo an MRI scan and requested more pain medications. R. at 251. Her prescription for Vicodin was refilled. R. at 251.

On March 5, 2008, Kosh finally underwent the MRI scan that had been recommended by Dr. Nabors. R. at 236, 255-256, 274-275. The scan revealed that Kosh had sustained disc herniations resulting in mild to moderate central canal stenosis and osteophyte formation. R. at 236, 255, 274. Nine days later, Dr. Nabors told Kosh that her treatment options included medications, epidural steroid injections, and surgery. R. at 250. Kosh refused the administration of injections because she had a "phobia of needles." R. at 250. She decided to have surgery because conservative treatment had failed to alleviate her pain. R. at 250.

Kosh underwent a hemilaminotomy on April 10, 2008. R. at 241, 253. The operation was performed by Dr. Nabors at St. Clair Hospital in Pittsburgh, Pennsylvania. R. at 241-242,

253-254. After performing a follow-up examination on May 5, 2008, Dr. Nabors told Kosh to "start a home therapy program with walking" and instructed her to avoiding lifting objects weighing more than ten pounds. R. at 249. It was noted that Kosh was still experiencing pain in her back and left leg, but that it was improving on a daily basis. R. at 249. She was still taking Vicodin to control her symptoms. R. at 249.

Dr. Nabors examined Kosh again on June 2, 2008. R. at 248. Although she walked with a normal posture and a normal gait, Kosh continued to complain of pain in her lower back and left leg. R. at 248. She was instructed to begin a physical therapy program and return for a follow-up visit in four weeks. R. at 248. Dr. Nabors refilled Kosh's prescription for Vicodin. R. at 248. The prescription was refilled again on July 22, 2008. R. at 247. On that occasion, however, Dr. Nabors advised Kosh to get off of Vicodin "as quickly as possible." R. at 247. A full month of physical therapy was recommended. R. at 247. Kosh participated in physical therapy sessions at Valley Outpatient Rehabilitation in Belle Vernon, Pennsylvania, during the fall of 2008. R. at 257-268.

Dr. Jose Ramirez DelToro, an orthopedic specialist, examined Kosh on September 30, 2008. R. at 271-273. Kosh complained of worsening pain whenever she engaged in prolonged sitting, lying or walking. R. at 271. Dr. DelToro recommended that an epidural injection be administered. R. at 272. Due to her fear of needles, Kosh refused the injection even though sedation had been offered to her. R. at 272. She asked that her Vicodin prescription be renewed. R. at 272. Although Dr. DelToro provided Kosh with enough Vicodin to last for three weeks, he admonished that he would not "chronically manage her pain." R. at 272. Kosh was informed that she would be referred to a physician with "access to urine drug screens" in the event that she

needed "chronic pain medication management."  R. at 272-273.  She again refused an epidural injection during a follow-up appointment on October 14, 2008.  R. at 270.

During the period of time relevant to this case, Dr. Myles H. Zuckerman served as Kosh's primary care physician.  R. at 67, 175.  On March 3, 2009, Dr. Zuckerman submitted a statement to Pennsylvania's Department of Public Welfare ("DPW") declaring Kosh to be "permanently disabled" due to failed back surgery, chronic back pain, and lumbar radiculopathy in her left leg.  R. at 355.  Depression was listed as a "secondary" cause of Kosh's "disability."  R. at 355.

On July 28, 2009, Dr. S.P. Barua performed a consultative physical examination of Kosh in connection with her applications for DIB and SSI benefits.  R. at 280-283.  During the examination, Kosh stated that she would typically experience increased pain in her lower back while sitting, standing or walking for more than twenty minutes at a time.  R. at 281.  She also asserted that she generally lifted objects weighing only five to ten pounds.  R. at 281.  After completing the examination, Dr. Barua reported that Kosh's sitting, standing and walking abilities were limited.  R. at 283.  Dr. Barua further suggested that Kosh could not lift objects weighing more than five to ten pounds "on a continuous basis."  R. at 283.

Dr. Paul Fox, a non-examining medical consultant, opined on August 12, 2009, that Kosh was physically capable of engaging in "light"[7] work activities involving only occasional postural maneuvers and no kneeling, crawling, or climbing of ladders, ropes or scaffolds.  R. at 284-290. In his consultative report, Dr. Fox acknowledged that Kosh's lifting, carrying, standing and

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

walking abilities were limited. R. at 290. Nonetheless, he expressed disagreement with Dr. Barua's assertion that Kosh's back impairment limited her ability to sit. R. at 290.

Dr. Marjorie Tavoularis performed a consultative psychological evaluation of Kosh on October 5, 2009. R. at 292-297. During the encounter, Kosh stated that she would have been able to "drag herself to work" if she were not "physically debilitated." R. at 294. After completing the evaluation, Dr. Tavoularis reported that Kosh was "moderately" limited in her ability to interact appropriately with co-workers and members of the general public. R. at 296. Kosh was deemed to be "slightly" limited in her abilities to understand, remember and carry out detailed instructions, interact appropriately with supervisors, and respond appropriately to work pressures and changes in usual and routine work settings. R. at 296. No "marked" or "extreme" limitations were found. R. at 296.

Dr. Lisa Cannon, a non-examining psychological consultant, opined on October 13, 2009, that Kosh was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. at 300. In the narrative portion of her consultative report, Dr. Cannon stated as follows:

> The claimant's basic memory processes are intact. She can make simple decisions. She is able to carry out very short and simple instructions. She is able to maintain concentration and attention for extended periods of time. Moreover, she is able to maintain socially appropriate behavior. She is self-sufficient. Additionally, she can sustain an ordinary routine without special supervision. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis. There are no restrictions in her abilities in regards to understanding and memory.

R. at 300. Kosh's subjective complaints were deemed by Dr. Cannon to be only "partially credible." R. at 300.

During the fall of 2009, Dr. Zuckerman continued to prescribe Vicodin for Kosh. R. at 327. On February 23, 2010, Dr. Zuckerman submitted a statement to the DPW declaring Kosh to be "temporarily disabled" as of 2007. R. at 353. He indicated that this "disability" was expected to last until June 1, 2010. R. at 353.

Dr. Zuckerman examined Kosh on February 9, 2010. R. at 325. It was noted that Kosh's brother had recently died in a car accident, causing her "depressive symptoms" to worsen. R. at 325. She was also found to be suffering from "severe chronic dermatitis" on her hands. R. at 325. Dr. Zuckerman referred Kosh for dermatological treatment. R. at 325. Kosh apparently cancelled several dermatological appointments after experiencing an improvement in her symptoms, expressing a desire to be seen when her rash was "more severe." R. at 324. Effexor was prescribed to control her depression. R. at 323-324. On August 17, 2010, Dr. Zuckerman observed that Effexor was keeping Kosh's "[d]epressive symptoms under satisfactory control." R. at 323. Kosh continued to take Vicodin during the intervening period of time. R. at 326.

On January 12, 2011, Dr. Lindsey Groves, a clinical psychologist affiliated with Kreinbrook Psychological Services, interviewed Kosh for roughly fifty minutes. R. at 338. After completing the interview, Dr. Groves opined that Kosh was 90% disabled because of her mental impairments. R. at 337. Dr. Groves also indicated that Kosh was *per se* disabled under Listings 12.04 and 12.06. R. at 337, 341. Kosh's prognosis was deemed to be poor because she was not receiving the appropriate level of mental health treatment. R. at 336. Dr. Groves reported that Kosh's abilities to deal with members of the general public, use judgment, deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations were anywhere from poor to nonexistent. R. at 343-344. Kosh's abilities in other areas were deemed to be "fair" or "good." R. at 343-344. Dr. Groves predicted that Kosh would

need to miss more than three days of work per month if she were to be employed on a full-time basis.  R. at 340.

Kosh detailed her own limitations in a history and assessment form completed on February 4, 2011.  R. at 346-350.  She indicated that, with pain, she could walk short distances or sit in a chair.  R. at 348.  Kosh asserted that, because of her pain, she could not stand in one place for an extended period of time.  R. at 348.  She stated that she typically slept between fourteen and sixteen hours per day.  R. at 349.  Kosh further suggested that reasons other than pain were contributing to her alleged inability to work.  R. at 348.

Dr. Mark Abbott, a chiropractor, evaluated Kosh on March 21, 2011.  R. at 357-364. After completing the evaluation, Dr. Abbott estimated that Kosh was 50% disabled because of injuries to her lumbar spine.  R. at 359.  He indicated that she could sit for only two hours, and stand or walk for only one hour, during the course of an eight-hour workday.  R. at 360.  Dr. Abbott reported that Kosh could frequently lift objects weighing up to ten pounds and occasionally lift objects weighing between eleven and twenty pounds.  R. at 360.  He predicted that she would need frequent rest periods and absences in the employment setting.  R. at 361.


## VI.    DISCUSSION

The arguments raised by Kosh relate to the third and fifth steps of the sequential evaluation process.[8]  ECF No. 9 at 3-4.  Kosh contends that the ALJ erred at the third step by failing to consider whether she was *per se* disabled under Listing 1.04.  *Id.* at 21-22.  She also

---

[8] Although Kosh purports to raise nine different arguments, some of them overlap significantly. With the exception of the argument concerning Listing 1.04A, every argument raised by Kosh relates to the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Kopar.  ECF No. 9 at 3-4.

maintains that he committed several errors in assessing her residual functional capacity, thereby leading to an incorrect determination at the fifth step. *Id.* at 14-21.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

It was the ALJ's responsibility to identify the particular Listings relevant to Kosh's impairments. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 120, n. 2 (3d Cir. 2000). Several Listings were specifically discussed in the ALJ's decision. R. at 14-16. Kosh asserts that the ALJ erred in failing to consider her spinal impairments under Listing 1.04A. ECF No. 9 at 21-22. While the ALJ did not expressly mention Listing 1.04A, he made the following observations:

> Although the medical evidence indicates that the claimant's impairment is severe within the meaning of the Regulations, the claimant has no impairment which meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Special consideration has been given to the claimant's musculoskeletal complaints in accordance with the revised musculoskeletal Listings. However, none of the medical findings concerning the claimant's

impairments meet or equal the criteria for severity of significant motor loss with muscle weakness and sensory and reflex loss, the major dysfunction of joint resulting in the inability to ambulate effectively, or other significant clinical findings or functional limitations as required by the applicable Listings.

R. at 14. This portion of the ALJ's decision made direct reference to the criteria spelled out in Listing 1.04A. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. Although the ALJ was required to discuss the relevant evidence enough to facilitate meaningful judicial review of his decision, he was not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Kosh contends that the ALJ neglected to consider the effects that her need for a cane and her obesity had on her back condition. ECF No. 9 at 21-22. In his decision, however, the ALJ expressly considered and rejected the idea that Kosh's obesity had rendered her *per se* disabled under the relevant Listings. R. at 16. Furthermore, the ALJ apparently did not believe that Kosh was incapable of working without the assistance of a cane.[9] He emphasized that a cane had been provided only at her *request*, thereby insinuating that her treating healthcare providers had not deemed it to be necessary. R. at 34. After completing his consultative physical examination, Dr. Barua reported that Kosh did not need a cane, and that she was "able to ambulate very well without any external support." R. at 283. Since Kosh does not point to more specific evidence suggesting that the ALJ's analysis at the third step was defective, her argument pertaining to that step does not entitle her to relief. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007).

Kosh's remaining arguments all relate, in one way or another, to the ALJ's residual functional capacity assessment.[10] ECF No. 9 at 3-4. Several of these arguments concern the

---

[9] A cane was prescribed for Kosh shortly before the hearing. R. at 72, 80.

[10] A challenge to the adequacy or sufficiency of testimony given by a vocational expert in response to a hypothetical question describing all limitations contained within the ultimate

weight given to the various medical opinions in determining Kosh's residual functional capacity. *Id.* at 14-21. The probative force of each medical opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999).

On two separate occasions, Dr. Zuckerman submitted statements to the DPW declaring Kosh to be "disabled." R. at 352-355. Those statements did not discuss Kosh's abilities and limitations on a function-by-function basis. The ultimate question of a claimant's "disability" is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Under the Commissioner's regulations, a conclusory statement from a medical professional characterizing an individual as "disabled" is not entitled to significant weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(explaining that the factors typically considered in ascertaining the weight of a "medical opinion" did not have to be discussed in relation to a physician's statement declaring a claimant to be "disabled"). The existence of jobs in the national economy consistent with a claimant's residual functional capacity raises a *vocational* question rather than a *medical* question. 20 C.F.R. §§ 404.1566(e), 416.966(e). Since Dr. Zuckerman was not necessarily familiar with the expectations of employers in the regional and national economies, his labeling of Kosh as a "disabled" individual was owed "little deference." *Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001).

The primary factual issues relating to Kosh's physical limitations center on her sitting, standing and walking abilities. Five and a half months after Kosh's back surgery, she complained of worsening pain with prolonged sitting, lying or walking. R. at 271. On that

residual functional capacity assessment is properly regarded as a direct challenge to that assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

occasion, Dr. DelToro observed that Kosh's back pain had been "improved by pain medications." R. at 271. Although Dr. Barua found Kosh's sitting, standing and walking abilities to be limited, he did not explain how frequently she could engage in such activities. R. at 283. Dr. Fox expressed the view that Kosh could sit for up to six hours, and stand or walk for up to two hours, during the course of an eight-hour workday. R. at 285. Only Dr. Abbott found Kosh's limitations in these areas to be sufficiently severe to preclude the performance of substantial gainful activity. He indicated that she could sit for only two hours, and stand or walk for only one hour, over the course of a standard workday. R. at 360. Kopar testified that no jobs existed in the national economy for an individual who was so limited. R. at 87. At the hearing, however, Kosh acknowledged that Dr. Abbott had examined her on only one occasion. R. at 81.

It is ordinarily inappropriate for an administrative law judge to credit the opinion of a non-examining medical consultant over that of a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Under the present circumstances, however, it was permissible for the ALJ to accord more weight to the assessment completed by Dr. Fox than to the assessment completed by Dr. Abbott. A chiropractor does not qualify as an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). Although an opinion provided by a chiropractor may be considered for the purpose of determining the effect that an impairment diagnosed by an "acceptable medical source" has on a claimant's ability to work, it is not necessarily entitled to the same weight as that typically given to an opinion rendered by a treating physician. *Hartranft*, 181 F.3d at 361-362. That is especially true in this case, since Dr. Abbott only examined Kosh once. R. at 81-82. Moreover, the ALJ "did not merely rubber stamp" Dr. Fox's opinion. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). Dr. Fox did not

believe that Kosh needed to alternate between sitting and standing in order to relieve her pain

and discomfort. R. at 285. The ALJ nevertheless afforded Kosh a sit/stand option. R. at 16. His

assessment of her sitting, standing and walking abilities constituted a well-reasoned, balanced

reflection of the relevant opinion evidence. *Chandler*, 667 F.3d at 361-362 (affirming a decision

in which an administrative law judge had credited the opinion of a non-examining medical

consultant over that of a nurse practitioner, who did not qualify as an "acceptable medical

source").

The ALJ concluded that Kosh could frequently lift or carry objects weighing up to ten

pounds and occasionally lift or carry objects weighing up to twenty pounds. R. at 16. Those are

the lifting and carrying abilities typically associated with "light" work. 20 C.F.R. §§

404.1567(b), 416.967(b). In the immediate aftermath of her surgery, Kosh was instructed not to

lift more than ten pounds. R. at 249. That instruction was given by Dr. Nabors on May 5, 2008.

R. at 249. As the ALJ noted, however, the ten-pound lifting restriction imposed by Dr. Nabors

was only effective for roughly one month. R. at 18. It was not of sufficient duration to implicate

the residual functional capacity analysis. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct.

1265, 152 L.Ed.2d 330 (2002). Dr. Barua opined that Kosh could not lift objects weighing more

than ten pounds "on a continuous basis." R. at 283. The ALJ's residual functional capacity

finding, which permitted the lifting of objects weighing more than ten pounds on only an

"occasional" basis, did not contradict Dr. Barua's opinion. R. at 16. Dr. Fox and Dr. Abbott

both indicated that Kosh could "occasionally" lift objects weighing between eleven and twenty

pounds. R. at 285, 360. The postural limitations identified in their assessments were later

reflected in the ALJ's residual functional capacity assessment. R. at 16, 286, 360. The

arguments put forth by Kosh provide no basis for disturbing the findings pertaining to her physical abilities and limitations.

Kosh also challenges the ALJ's assessment of her mental limitations. Dr. Groves found Kosh to be 90% disabled due to her mental condition. R. at 337. According to Dr. Groves, Kosh was unable to deal with members of the general public, use judgment, deal with work stresses, behave in an emotionally stable manner, or relate predictably in social situations. R. at 343-344. Dr. Groves predicted that Kosh would miss more than three days of work per month if she were to be employed on a full-time basis. R. at 340. Kopar testified that no jobs existed in the national economy for an individual with the functional limitations described in Dr. Groves' report. R. at 86-87.

When Kosh was examined by Dr. Tavoularis, she acknowledged that she "could drag herself to work" despite the limitations resulting from her depression. R. at 294. Kosh apparently told Dr. Tavoularis that "chronic pain," rather than a psychiatric impairment, was preventing her from working. R. at 295. Dr. Tavoularis found Kosh to be only "slightly" limited in her abilities to understand, remember and carry out detailed instructions, interact appropriately with supervisors, and respond appropriately to work pressures and changes in usual and routine work settings. R. at 296. Kosh's ability to interact appropriately with co-workers and members of the general public was deemed to be only "moderately" limited. R. at 296. The ALJ adequately accounted for Dr. Tavoularis' findings by restricting Kosh to "jobs involving routine, repetitive work with simple instructions, in a stable environment, requiring little independent decision making and only occasional contact with the general public, co-workers, and supervisors." R. at 16.

Where medical professionals submit conflicting reports, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Dr. Groves based her assessment on a single interview lasting for only fifty minutes. R. at 82, 338. Like Dr. Groves, Dr. Tavoularis premised her opinion on the findings of a single evaluation. R. at 292-297. At the hearing, Kosh acknowledged that she was not under the continuous care of a psychiatrist or mental health therapist, and that only Dr. Zuckerman had been treating her for depression. R. at 75-76. Her treatment was apparently limited to a prescription for Effexor. R. at 76. Given that Kosh did not require extensive treatment for her mental condition and visited Dr. Groves on only one occasion, it was permissible for the ALJ to credit the findings of Dr. Tavoularis over those of Dr. Groves. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011).

After interviewing Kosh, Dr. Groves gave her a Global Assessment of Functioning ("GAF") rating of fifty.[11] R. at 338. Although she did not find the extensive limitations described by Dr. Groves, Dr. Tavoularis assigned Kosh a GAF score of forty.[12] R. at 295. Kosh faults the ALJ for discounting the import of her low GAF scores. ECF No. 9 at 3, 11, 13, 21. Nonetheless, a claimant's GAF ratings do not directly correlate with his or her ability to perform

---

[11] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

[12] An individual with a GAF score falling between thirty-one and forty exhibits *either* "[s]ome impairment in reality testing or communication" *or* "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. Depending on his or her precise circumstances, an individual with a GAF rating in this range *may* be "unable to work." *Id.*

work-related tasks. *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008). The assessments describing Kosh's abilities and limitations on a function-by-function basis were of greater probative value than the GAF scores. *Davis v. Astrue*, 830 F.Supp.2d 32, 45-48 (W.D.Pa. 2011). In her consultative report, Dr. Cannon stated that Dr. Tavoularis' examination findings were inconsistent with the GAF rating of forty given to Kosh. R. at 314. Dr. Cannon speculated that Dr. Tavoularis may have "taken physical limitations into consideration when arriving at the GAF score." R. at 314. The ALJ specifically noted the inconsistency in Dr. Tavoularis' examination report. R. at 25. Given that Dr. Tavoularis did not identify disabling mental limitations, a reading of her chosen GAF score to support a finding of disability would render her examination report "internally contradictory." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Since Kosh fails to explain how her low GAF scores specifically undermined the ALJ's findings concerning work-related abilities, the ALJ's decision cannot be set aside. *Bracciodieta-Nelson v. Commissioner of Social Security*, 782 F.Supp.2d 152, 165 (W.D.Pa. 2011).

Kosh suggests that the ALJ erred in failing to credit her subjective complaints. ECF No. 9 at 4. An administrative law judge must give "serious consideration" to a claimant's subjective complaints whenever the record contains objective evidence of an impairment that could reasonably be expected to cause the symptoms described in his or her testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). It does not follow, however, that the claimant's testimony must be credited in every respect. *Chandler*, 667 F.3d at 363. A careful review of the record confirms that Kosh's subjective complaints were appropriately considered. For instance, Kosh testified that her eczema would get worse whenever she placed her hands in water for extended periods of time. R. at 66. The ALJ accounted for that testimony by precluding any jobs requiring Kosh to frequently immerse her hands in water. R. at 16, 84.

Because Kosh had repeatedly refused injections and requested only more pain medications, the ALJ found her testimony to be lacking in credibility to the extent that it alleged an inability to perform the "sedentary"[13] duties involved with the jobs identified by Kopar. R. at 17. The ALJ also expressed concern about the fact that Kosh had not submitted a claim under the Workers' Compensation Act after suffering the injury alleged to have occurred on her proposed onset date. R. at 32. These factors all had some relevance to Kosh's credibility as a witness. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ's thorough opinion adequately explains why he chose to credit and discredit different portions of Kosh's testimony. R. at 10-40.

Kosh testified that she needed to utilize a cane in order to stand or walk. R. at 80. The ALJ did not find this portion of Kosh's testimony to be credible. R. at 34. In any event, Kopar testified that an individual's use of a cane for standing or walking would not preclude him or her from working as a surveillance systems monitor or an order clerk. R. at 85. Although Kosh devotes a portion of her brief to her alleged need for a cane, she fails to explain how her argument pertaining to that issue would undermine the ALJ's decision in this case. ECF No. 9 at 4.

Every functional limitation contained within the ALJ's residual functional capacity assessment was conveyed to Kopar at the hearing. R. at 16, R. at 83-86. The ALJ was not required to credit every limitation *alleged* by Kosh. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Since all of Kosh's credibly established limitations were described by the ALJ, Kopar's testimony satisfied the Commissioner's burden of production at the fifth step of the

---

[13] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

**VII.    CONCLUSION**

The Commissioner's decision denying Kosh's applications for DIB and SSI benefits is "supported by substantial evidence."  42 U.S.C. § 405(g).  The motion for summary judgment filed by Kosh (*ECF No. 8*) will be denied, and the motion for summary judgment filed by the Commissioner (*ECF No. 10*) will be granted.  The Commissioner's "final decision" in this case will be affirmed.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Christy Wiegand
       Assistant United States Attorney
       E. David Harr, Esquire

       (*Via CM/ECF Electronic Mail*)